IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WESTERN SURETY COMPANY,**

101 S. Reid Street
Sioux Falls, SD 57103

       **Plaintiff,**

v.                                                        Civil Action No. 1:15-cv-327

**U.S. ENGINEERING COMPANY,**

       Serve: CT Corporation System, Registered Agent
               1015 15th St. NW
               Suite 1000
               Washington, DC 20005

       **Defendant.**

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

The plaintiff, Western Surety Company, by counsel, submits the following as its Complaint for Declaratory Judgment and Injunctive Relief against the defendant, U.S. Engineering Company.

## Parties

1.    Western Surety Company ("Western Surety") is a South Dakota corporation which maintains its principal place of business in Sioux Falls, South Dakota. Western Surety is duly authorized to issue surety bonds relating to construction projects located in the District of Columbia.

2.    U.S. Engineering Company ("U.S. Engineering") is a Missouri corporation which maintains its principal place of business in Kansas City, Missouri. U.S. Engineering is a construction contractor duly authorized to engage in construction and renovation in the District of Columbia.

**Jurisdiction and Venue**

3. This Court has jurisdiction of this dispute pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 2201(a) because the parties are citizens of different states and the matter in controversy exceeds $75,000, and the facts pled herein establish the existence of an actual controversy within the Court's jurisdiction, respectively. Western Surety is a citizen of South Dakota and U.S. Engineering is a citizen of Missouri.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the construction project at issue in this matter is located in the District of Columbia.

**Facts**

5. Sometime before May 1, 2012, Trane US, Inc., and U.S. Engineering entered into a contract under the terms of which U.S. Engineering was to perform certain construction and renovation work at the Embassy of the Republic of South Africa, located at 3051 & 3101 Massachusetts Avenue NW, Washington, District of Columbia 20008 (the "Project").

6. On or about May 1, 2012, U.S. Engineering awarded its subcontract to United Sheet Metal, Inc. ("United Sheet Metal") under the terms of which United Sheet Metal was to furnish labor and materials relating to the installation of sheet metal at the Project (the "Subcontract"). A true copy of the Subcontract between U.S. Engineering and United Sheet Metal is attached as Exhibit 1 and is incorporated by reference.

7. At the request of United Sheet Metal, Western Surety issued a subcontract performance bond (Bond No. 929523653) naming United Sheet Metal as its principal and U.S. Engineering as its obligee (the "Bond"). The Bond was issued to guarantee United Sheet Metal's performance of its obligations under the Subcontract. A true copy of the Bond is attached as

Exhibit 2 and is incorporated by reference. The Bond contains the following provisions, *inter alia*:

> § 3  If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after
>
> .1  the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor default;
> .2  the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and
> .3  the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

Ex. 2, p. 2.

8.  Upon information and belief, in or about February of 2013, issues began to arise between United Sheet Metal and U.S. Engineering. According to United Sheet Metal, U.S. Engineering failed to pay proper payment applications, process approved change orders, or provide sufficient notice of and the opportunity to cure alleged improper work. According to U.S. Engineering, United Sheet Metal failed to staff the project properly, failed to timely perform its work, provided labor and/or materials of a substandard quality, and otherwise failed to comply with its obligations under the subcontract. The dispute between U.S. Engineering and

United Sheet Metal continued throughout the spring and summer of 2013. However, at no time during this dispute did U.S. Engineering provide any notice whatsoever to Western Surety that United Sheet Metal was inadequately performing its work under the Subcontract, or that it was considering declaring a default.

9. On or about September 9, 2013, U.S. Engineering terminated the Subcontract on the grounds that United Sheet Metal had failed to properly or timely perform its obligations. U.S. Engineering failed to provide any contemporaneous notice, or any notice whatsoever, to Western Surety of the termination or any declaration of default.

10. U.S. Engineering engaged a replacement subcontractor to perform the remaining sheet metal work on the Project. The replacement subcontractor performed the remaining work; however, according to U.S. Engineering, the total cost to perform exceeded the Subcontract funds available at the time United Sheet Metal was terminated.

11. United Sheet Metal filed a Demand for Arbitration with the American Arbitration Association (the "Demand"), requesting an award of damages in the amount of $331,242 against U.S. Engineering, pursuant to § 26 of the Subcontract, which reads in relevant part:

> Any controversy or claim of Contractor against Subcontractor or Subcontractor against Contractor shall be resolved by arbitration pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association in effect on the date on which the demand for arbitration is made.

Ex. 1, p. 8. The bases of United Sheet Metal's Demand were (1) U.S. Engineering's failure to pay United Sheet Metal the balance of the Subcontract funds, including approved change orders, (2) U.S. Engineering's failure to pay United Sheet Metal for "other change work," and (3) U.S. Engineering's improper termination of United Sheet Metal's work in bad faith and without the required notice or right to cure.

...

12. U.S. Engineering filed its Counterclaim in the arbitration proceedings requesting damages in the amount of $417,379 as a result of United Sheet Metal's alleged default under the Subcontract.

13. United Sheet Metal and U.S. Engineering engaged in litigation within the arbitration proceeding, but a final decision was never reached. Upon information and belief, during the pendency of arbitration, United Sheet Metal ceased doing business, liquidated its assets, and discarded its business records, including records relating to the Project. United Sheet Metal has also, upon information and belief, ceased active participation in the arbitration proceedings and its counsel has withdrawn.

14. Finally, on June 9, 2014, over nine months after United Sheet Metal was terminated, after all of the sheet metal work had been completed by the replacement subcontractor, and after United Sheet Metal had gone out of business, liquidated its assets, and discarded its business records, U.S. Engineering provided its first notice to Western Surety of any problem and that it intended to assert a claim under the Bond. A copy of U.S. Engineering's June 9, 2014 letter (with attachments thereto omitted) is attached as Exhibit 3. Western Surety received the notice letter on June 12, 2014.

15. At no time prior to June 9, 2014 did Western Surety receive notice of any (a) performance issues on the Project, (b) disputes between United Sheet Metal and U.S. Engineering, (c) any alleged default of United Sheet Metal, (d) U.S. Engineering's termination of United Sheet Metal, or (e) the arbitration proceedings from U.S. Engineering or anyone else.

16. On March 4, 2015, U.S. Engineering filed a request for joinder in the arbitration proceedings asking that Western Surety be joined as a party and that a single arbitrator be appointed "for the limited purpose of deciding whether Western Surety Company should be

joined to the Arbitration." Exhibit 4, Letter from Matt R. Hubbard, Esq. to Ms. Carmen Preda, March 4, 2015 (internal quotation marks and brackets omitted). Western Surety objects to the American Arbitration Association determining any aspect of the dispute between it and U.S. Engineering, including arbitrability, as it has never agreed to submit any dispute relating to its rights and obligations under the Bond to arbitration.

17. As a result of U.S. Engineering's extreme delay in providing notice of U.S. Engineering's alleged default and termination, Western Surety has suffered actual prejudice, including but not limited to:

    a. The loss of its right to choose between the options available to it as a performance bond surety under the Bond, namely, to (i) perform and complete the Subcontract using United Sheet Metal (Ex. 2, § 5.1), (ii) perform and complete the Subcontract itself, through its agents or independent contractors (Ex. 2, § 5.2), (iii) obtain bids and hire a replacement contractor to perform the Subcontract (Ex. 2, § 5.3), or (iv) waive these rights and either make payment to U.S. Engineering or deny liability (Ex. 2, § 5.4);

    b. The loss of its right to participate in the bidding/selection process to determine which potential replacement subcontractor would complete the work (Ex. 2, § 3.3);

    c. The loss of its right to request and compel U.S. Engineering's attendance at a conference with Western Surety and United Sheet Metal to explore resolution of the issues between United Sheet Metal and U.S. Engineering, and to discuss United Sheet Metal's performance (Ex. 2, § 3.1);

      d.    Its inability to investigate and marshal evidence relating to the claims of United Sheet Metal against U.S. Engineering for payment of the base contract price, approved change orders, "other change work," and for wrongful termination;

      e.    Its inability to investigate and marshal evidence relating to the defenses of United Sheet Metal to the claims asserted against it by U.S. Engineering;

      f.    Its inability to investigate and/or secure the assets, accounts receivable, remaining contract funds, equipment, and materials which United Sheet Metal owned or to which it was otherwise entitled with respect to any bond issued by Western Surety at United Sheet Metal's request; and

      g.    The loss of its right to secure and perfect its rights as United Sheet Metal's surety, including its rights of indemnity.

18.    The effect of the actual prejudice described in the immediate preceding paragraph is to discharge and release Western Surety from any obligations under the Bond pursuant to § 4 of the Bond.

19.    Western Surety cannot be compelled to arbitrate its dispute with U.S. Engineering because (1) it is not signatory to any agreement to arbitrate, and (2) the arbitration provision contained in the Subcontract and incorporated into the Bond limits arbitration to controversies or claims of U.S. Engineering against United Sheet Metal or United Sheet Metal against U.S. Engineering only.  Any controversies or claims between U.S. Engineering and Western Surety under the Bond, therefore, are subject to the jurisdiction of this Court as specifically set forth under the terms and conditions of the Bond.

20.     The intent of U.S. Engineering and Western Surety to litigate their dispute in this Court is established in § 11 of the Bond, which states in relevant part:

> Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located[.]

Ex. 2, p. 3.

21.     Adjudication of the declaratory relief sought in this Complaint will serve a useful purpose in clarifying and settling the legal relations at issue between the parties, will terminate and afford relief from uncertainty, insecurity and controversy, will finally settle the controversy between the parties, will be in the interest of the convenience of the parties, will be appropriate in light of the parties' conduct, and will be in the public interest.  *See, e.g., Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994); *Hanes Corp. v. Millard*, 531 F.2d 585, 592 n.4 (D.C. Cir. 1976).

### COUNT I – Declaratory Relief (Arbitrability)

22.     Western Surety incorporates by reference the allegations contained in ¶¶ 1-21 above as if fully set forth herein.

23.     There is an actual and continuing justiciable controversy between Western Surety and U.S. Engineering as to whether Western Surety is required to arbitrate (1) any disputes involving the release of Western Surety's obligations under the Bond due to actual prejudice it suffered as a result of U.S. Engineering's failure to comply with § 3 of the Bond, or (2) Western Surety's defenses to any claims U.S. Engineering may bring against the Bond in relation to United Sheet Metal's alleged failure to perform.

24.     Western Surety is not a party to any agreement to arbitrate disputes between it and U.S. Engineering with respect to the Bond or the Project.

25. The arbitration provision in the Subcontract requires arbitration only of controversies or claims of U.S. Engineering against United Sheet Metal or United Sheet Metal against U.S. Engineering, and does not require arbitration of disputes involving Western Surety's rights and obligations under the Bond.

26. Western Surety has not consented and does not consent to resolve any disputes relating to the Bond or the Project via arbitration.

27. Pursuant to 28 U.S.C. § 2201, Western Surety requests that the Court declare that Western Surety is not required to arbitrate any disputes or controversies regarding its rights, defenses, or obligations in connection with the Bond.

### Count II – Injunctive Relief

28. Western Surety incorporates by reference the allegations contained in ¶¶ 1-27 above as if fully set forth herein.

29. Despite the fact that Western Surety is not required to and has not agreed to arbitrate disputes over its rights and obligations under the Bond, U.S. Engineering is attempting to force its participation in arbitration proceedings purporting to determine Western Surety's rights, obligations, and defenses under the Bond, including the arbitrability of those disputes.

30. U.S. Engineering's intended course of action, if carried out, will seriously and irreparably damage Western Surety such that it cannot be adequately compensated in money damages unless U.S. Engineering is enjoined from engaging in that course of action, including but not limited to conducting arbitration proceedings purporting to determine Western Surety's rights and liabilities under the Bond.

31.     Western Surety is entitled to and requests the entry of an order directing U.S. Engineering to refrain from participating in any arbitration proceedings which purport to determine Western Surety's rights and liabilities under the Bond.

### COUNT III – Declaratory Relief (Release of Bonded Obligations)

32.     Western Surety incorporates by reference the allegations contained in ¶¶ 1-31 above as if fully set forth herein.

33.     There is an actual and continuing justiciable controversy between Western Surety and U.S. Engineering as to whether Western Surety has any obligation to pay U.S. Engineering any sums as a result of United Sheet Metal's alleged default on the Project and/or the cost incurred by U.S. Engineering to hire a replacement subcontractor to finish the work.

34.     U.S. Engineering does not have a right to assert a claim against the Bond because Western Surety has suffered actual prejudice as a result of U.S. Engineering's extreme delay in providing notice to Western Surety of United Sheet Metal's alleged default and termination, such that Western Surety cannot, among other things, (1) choose from the options available to it upon the default of its principal pursuant to §§ 5.1-5.4 of the Bond; (2) participate in the bidding or selection process to determine which replacement subcontractor will complete the project pursuant to § 3.3 of the Bond; (3) compel U.S. Engineering's attendance at a conference with Western Surety and United Sheet Metal to explore resolution of the issues between United Sheet Metal and U.S. Engineering, and to discuss United Sheet Metal's performance under § 3.1 of the Bond; (4) adequately investigate and maintain the claims of United Sheet Metal against U.S. Engineering for payment of the base contract price, approved change orders, "other change work," and for wrongful termination; (5) adequately investigate and assert the defenses of United Sheet Metal against the claims asserted against it by U.S. Engineering; (6) investigate and/or

secure the assets, accounts receivable, remaining contract funds, equipment, and materials which United Sheet Metal owned or to which it was otherwise entitled with respect to any bond issued by Western Surety at United Sheet Metal's request; or (7) otherwise secure and perfect its rights as United Sheet Metal's surety, including its rights of indemnity.

35. Pursuant to 28 U.S.C. § 2201, Western Surety requests that this Court declare that Western Surety has no obligations to U.S. Engineering under the Bond.

WHEREFORE, Western Surety Company respectfully requests the following relief:

A. A declaration pursuant to 28 U.S.C. § 2201 that Western Surety is not required to arbitrate any disputes or controversies regarding its rights, liabilities, or obligations under the Bond;

B. An injunction prohibiting U.S. Engineering from participating in any arbitration proceedings which purport to determine or affect Western Surety's rights, liabilities, or obligations under the Bond;

C. A declaration pursuant to 28 U.S.C. § 2201 that Western Surety's obligations to U.S. Engineering under the Bond have been discharged and released, and rendering the bond null and of no further force or effect;

D. An award of its reasonable attorneys' fees and costs; and

E. Such other relief the Court should deem appropriate.

Dated:  March 6, 2015

                              Respectfully submitted,

                              <u>     /s/ Thomas J. Moran     </u>
                              Thomas J. Moran, DC Bar No. 1004343
                              SETLIFF & HOLLAND, P.C.
                              4940 Dominion Boulevard
                              Glen Allen, VA  23060
                              Phone:  (804) 377-1260
                              Fax:     (804) 377-1280
                              Email:  tmoran@setliffholland.com

                              *Attorney for Plaintiff, Western Surety Company*