UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WESTERN SURETY COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-cv-327 (TSC) |
| U.S. ENGINEERING COMPANY | ) ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION

Plaintiff Western Surety Company brought this suit for declaratory and injunctive relief seeking to enjoin Defendant U.S. Engineering Company from compelling arbitration proceedings against Plaintiff and making a claim on a surety bond issued by Plaintiff. Defendant has filed a motion to dismiss under Rule 12(b)(6), arguing that the parties are contractually bound to arbitrate their dispute over the bond. Plaintiff responded by filing a motion for partial summary judgment solely on the issue of whether it must arbitrate its dispute with the Defendant. For the reasons stated herein, Defendant's motion will be **DENIED**, and Plaintiff's motion will be **GRANTED**.

### I. BACKGROUND

On January 25, 2012, Turner Construction and Defendant entered into a contract for Defendant to perform construction and renovation work at the South African Embassy in Washington, D.C. (ECF No. 16, Pl. Statement of Facts ("SOF") ¶ 1). Defendant then awarded a subcontract for sheet metal work on the project to United Sheet Metal, Inc. (*Id.* ¶ 2). The subcontract contains the following provisions that are pertinent for the pending motions:

1

- The introductory paragraph identifies U.S. Engineering as the "Contractor" for purposes of the contract, who enters into a "subcontract" with United Sheet Metal.

- Paragraph 26, which is entitled "Arbitration," states:

  Any controversy or claim of Contractor against Subcontractor or Subcontractor against Contractor shall be resolved by arbitration pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association in effect on the date on which the demand for arbitration is made . . . .

- Paragraph 31, the Merger Clause, integrates the prior communications and representations "between Contractor and Subcontractor," and notes that the subcontract is the "final and complete agreement between Contractor and Subcontractor."

(Pl. Ex. 1).

After entering into the subcontract with Defendant, United Sheet Metal negotiated with Plaintiff to issue a surety bond for $585,000. (Pl. Ex. 2). Under the terms of the surety bond:

- United Sheet Metal is named as the "Contractor," Plaintiff is the "Surety," and Defendant is the "Owner." (Pl. Ex. 2 at p. 1).

- "The Contractor and Surety [Plaintiff], jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner [Defendant] for the performance of the Construction Contract, which is incorporated herein by reference." (*Id.* § 1).

- "Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located . . . ."

(Pl. Ex. 2, §§ 15, 1, 11.)

In early 2013, a dispute over the performance of the subcontract arose between Defendant and United Sheet Metal, which led to Defendant terminating the subcontract. (Pl. SOF ¶¶ 11–12). Defendant hired a replacement subcontractor to finish the sheet metal work, and United Sheet Metal sought to compel arbitration, seeking $331,242 in damages. (*Id.* ¶¶ 13–14). Defendant filed a counterclaim for $417,379 in damages. (*Id.* ¶ 14). The arbitration proceedings between Defendant and United Sheet Metal have not concluded. (*Id.* ¶ 15).

2

On June 9, 2014, Plaintiff received a letter from Defendant stating that it had terminated United Sheet Metal's performance of the subcontract, and that Defendant intended to make a claim under the surety bond.  (*Id*. ¶ 16).  On March 4, 2015, Defendant filed a request to join Plaintiff as a party in Defendant's arbitration proceedings with United Sheet Metal.  (*Id*. ¶ 18).  Plaintiff refused to consent to the joinder, and instead filed its Complaint in this court on March 6, 2015.  (*See id*. ¶ 19).

Defendant argues that because the bond agreement incorporates the subcontract by reference, Plaintiff is bound by the arbitration clause in the subcontract to arbitrate its claim on the surety bond, as well as any issues of arbitrability.  Plaintiff asserts that it never consented to arbitration, and that it is impossible to interpret the text of the bond or the subcontract to bind Plaintiff to the arbitration clause.

## II. STANDARD OF REVIEW

Though Defendant's motion is styled as a motion to dismiss, a motion that seeks to compel or preclude arbitration is evaluated under the summary judgment standard "as if it were a request for 'summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'"  *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (internal quotation marks omitted); *see also W & T Travel Servs., LLC v. Priority One Servs., Inc.*, 69 F. Supp. 3d 158, 164 (D.D.C. 2014) ("Both motions to stay and compel arbitration focus judicial scrutiny on the arbitrability of the dispute, rather than the dispute itself and, when both motions are made concurrently, they may be addressed together as cross-motions for summary judgment."), *appeal dismissed*, No. 14-7152, 2015 WL 7693578 (D.C. Cir. Nov. 2, 2015).

Summary judgment is appropriate where there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### III. ANALYSIS

**A.   Arbitration Analysis**

The parties' motions turn on one issue—whether Plaintiff is bound by the arbitration clause in the subcontract. The Supreme Court has held that "arbitration is a matter of contract . . . on an equal footing with other contracts" and courts must "enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted).

Since "[a]rbitration is a matter of contract . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

"When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (alterations omitted) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The parties agree that District of Columbia law governs this dispute, since the surety bond's choice of law provision specifies that disputes will be governed by the law of the state where the construction took place, and "[t]he District of Columbia Court of Appeals has adopted the general rule 'that parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified.'" *Kroger v. Legalbill.com*, 436 F. Supp. 2d 97, 103 (D.D.C. 2006) (quoting *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980)).

Under District of Columbia law, the court relies on the plain language of the contract when examining parties' intent to be bound. *See Am. Fed'n of Gov't Emps., Local 2924 v. FLRA*, 470 F.3d 375, 381 (D.C. Cir. 2006); *see also Tillery v. D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006). "Under D.C. law, 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered in the contract, unless the written language is not susceptible of a clear and definite undertaking.'" *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, Civil Action No. 13-1981 (BAH), 2016 WL 471273, at *13 (D.D.C. Feb. 7, 2016)(alterations and internal quotation marks omitted)(quoting *Abdelrhman v. Ackerman,* 76

A.3d 883, 888 (D.C. 2013)).  If the language is clear, the court's role is to rely on the clear language, but if an integrated agreement contains ambiguous terms, the court, after admitting parole evidence that may include habitual and customary practices, must interpret the contract using a reasonable person standard.  *Tillery*, 912 A.2d at 1176.  Ambiguous terms are interpreted against the drafter.  *Tower Ins. Co. of N.Y. v. Davis/Gilford*, 967 F. Supp. 2d 72, 81 (D.D.C. 2013).  As the party seeking to compel arbitration, Defendant bears the burden of showing that there is an enforceable arbitration agreement.  *See Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 129 (D.D.C. 2013).

**B.     Arbitrability**

There is "a liberal federal policy favoring arbitration agreements," and an attendant presumption in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see Data Mountain Sols., Inc. v. Giordano*, Civil Action No. 06-1666 PLF, 2006 WL 6908604, at *1 (D.D.C. Nov. 21, 2006).  Relying on this policy and presumption, Defendant argues that Plaintiff agreed to arbitrate the issue of arbitrability because the arbitration clause in the subcontract adopts the rules of the American Arbitration Association ("AAA"), which various courts have determined leave the question of the arbitrability of a dispute to an arbiter.

The Supreme Court has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Ctr.*, 561 U.S. at 68–69.  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  *Id.* at 70.  However, "a heightened standard applies to

the determination that the parties agreed to arbitrate arbitrability, requiring 'clear and unmistakable evidence that they did so.'" *W & T Travel Servs.*, 69 F. Supp. 3d at 166 (quoting *First Options of Chi.*, 514 U.S. at 944).

As discussed below, the court finds that Plaintiff is not bound by the arbitration agreement in Defendant's subcontract. Accordingly, there is no "clear and unmistakable evidence" that Plaintiff intended to arbitrate the issue of arbitrability. Thus, the federal presumption in favor of arbitration does not guide the court's analysis here. *See Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005) ("[I]n deciding arbitrability, 'courts generally should apply ordinary state-law principles that govern the formation of contracts.'") (alterations omitted) (quoting *First Options of Chi.*, 514 U.S. at 944)); *Institut Pasteur v. Chiron Corp.*, No. CIV.A.03-0932(JDB), 2005 WL 366968, at *10 (D.D.C. Feb. 16, 2005) ("[T]his federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound.") (internal quotation marks and some citations omitted) (quoting *Fleetwood Enters. Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir. 2002)).

**C.     Plaintiff is Bound By the Terms of the Subcontract Even Though Plaintiff Was Not a Party to the Contract**

Next, Defendant argues that Plaintiff must arbitrate its claims because the surety bond agreement explicitly "incorporates by reference" the subcontract between Defendant and United Sheet Metal, which contains a binding arbitration provision. Under District of Columbia law, "[w]hen a contract incorporates another writing, the two must be read together as the contract between the parties." *Sheriff v. Medel Elec. Co.*, 412 A.2d 38, 41 (D.C. 1980) (finding that employer who was not a party to a collective bargaining agreement ("CBA") was still bound by its terms because the employer had signed an agreement with a labor union that incorporated the

7

terms of the CBA by reference).  Therefore, a surety can "be required to arbitrate its claims pursuant to an incorporated arbitration provision in [a] subcontract." *Tower Ins. Co.*, 967 F. Supp. 2d at 82 ("The Performance Bond [executed by Tower] states that the Subcontract 'is hereby referred to and made a part' of the Bond . . . .  The Court can discern no other meaning or effect of this language but to include the Subcontract's terms as provisions of the Performance Bond in their entirety.") (citations omitted); *see Jewish Fed'n of Greater New Orleans v. Fid. & Deposit Co. of Md.*, No. 01-30371, 2001 WL 1085096, at *1 (5th Cir. 2001) ("[B]ecause its bond incorporates by reference the construction contract's arbitration provision, that provision is binding on [the surety].").

However, even though Plaintiff is bound by the subcontract as a whole, the court must consider the separate question of whether Plaintiff is also bound by the terms of the arbitration clause.

### D.    Plaintiff Is Not Bound by the Arbitration Clause in the Subcontract

The arbitration clause in the subcontract provides:

> Any controversy or claim of <u>Contractor [Defendant] against Subcontractor [United Sheet Metal] or Subcontractor against Contractor</u> shall be resolved by arbitration .
> . . .

(Pl. Ex. 1, § 26) (emphasis added).  In order to get around what seems to be an agreement that controversies or claims involving only the <u>contractor (Defendant) and the subcontractor</u> must be arbitrated, Defendant advocates linguistic gymnastics.

Defendant begins by pointing out that the word "or" is disjunctive, and therefore the sentence contains two clauses—one on each side of the disjunctive "or."  Because of the disjunctive "or," Defendant argues, the sentence describes two separate categories of disputes that must be arbitrated.  First, "any controversies . . . shall be resolved by arbitration."

Additionally, any "claim of <u>Contractor against Subcontractor or Subcontractor against Contractor</u> shall be resolved by arbitration." In other words, Defendant contends that because "controversy" and "claim" are separated by the disjunctive "or" and the phrase "Contractor against Subcontractor or Subcontractor against Contractor" follows "claim," the limiting contractor/subcontractor language only modifies the word "claim." Therefore, according to Defendant, "any controversy" involving any parties must be arbitrated, as well as any "claim of Contractor against Subcontractor or Subcontractor against Contractor." (ECF No. 15, Defs. Br. pp. 10–11).

Defendant contends that reading the arbitration clause any other way would mean that it contains superfluous language. Specifically, Defendant argues that because the first phrase "any controversy," includes a "claim," then the latter word is redundant unless the word "claim" is limited to disputes between the contractor and subcontractor:

> If the clause "any controversy" was intended to mean the same thing as "claim", the drafter would have added the word "between" and removed the word "of" from the arbitration clause, as follows: "Any controversy or claim [between] ~~of~~ Contractor against Subcontractor . . . shall be resolved by arbitration . . . ". Also, if the clause "any controversy" and "claim" were intended to mean the same thing, then you should be able to remove the clause "or claim" and the arbitration clause should still make sense. However, when you do so, the clause does not make sense, as follows: "Any controversy ~~or claim~~ of Contractor against Subcontractor…shall be resolved by arbitration…".
>
> The word "or" is a word of choice. There is only a choice in the arbitration clause between "any controversy" or "claim of Contractor against Subcontractor . . . ". There is no choice if "any controversy" and "claim" are both later modified by *"of <u>Contractor against Subcontractor</u>. . ."* language because "any controversy" would include the "claim" described.

(*Id.* p. 12) (alterations and emphasis in original).

The court finds Defendant's argument unpersuasive. As an initial matter, Defendant is— or ought to be—well aware of lawyers' propensity for drafting legal documents using redundant

or repetitive terminology.  Thus, any potential redundancy between the use of "controversy" and "claim" does not require reading the clause the way Defendant proposes.

Instead, the court agrees with the Plaintiff's argument, which is that the "of Contractor against Subcontractor" language is actually a limiting clause that means only those two parties are bound by the arbitration agreement, and not outside parties.  Reading the clause as Defendants propose would render the phrase "Contractor against Subcontractor or Subcontractor against Contractor" superfluous: if "any controversy" must be arbitrated, then there would be no reason to also provide that disputes between the contractor and subcontractor must be arbitrated.  Defendants essentially ask the court to read the arbitration clause as providing that "all controversies or claims" are subject to arbitration or, similarly, that "all controversies or claims, including those between the contractor and subcontractor" are subject to arbitration.  But the clause is not that broad and does not include punctuation suggesting such an interpretation.

The clause here is different from the broad arbitration clauses in the two cases upon which Defendant primarily relies.  *Exchange Mutual Insurance Company v. Haskell Company*, 742 F.2d 274 (6th Cir. 1984), involved a claim by a prime contractor against a surety company.  The prime contractor, Haskell, entered into a general contract that provided that

> [a]ll claims, disputes and other matters in question arising out of, or relating to this contract or the breach thereof, except for claims which have been waived by the making or acceptance of final payment as provided by subparagraphs 8.6.5 and 8.6.6 and which cannot be settled by negotiation between the Contractor and the Owner, shall be decided in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

*Id*. at 275 (emphasis added).  The subcontract incorporated by reference the prime contract and the surety contract incorporated by reference the subcontract.  *Id*. at 276.  When Haskell initiated arbitration proceedings against the surety company, the latter refused to arbitrate and sought

protection from the court. *Id.* at 275. The district court rejected the surety's claims and directed the parties to proceed to arbitration. *Id.* The Sixth Circuit Court of Appeals affirmed. *Id.*

Unlike the arbitration clause here, the arbitration clause in *Exchange Mutual Insurance* did not have any limiting language. *See id*. at 275. Rather, the clause stated "[a]ll claims, disputes and other matters in question arising out of, or relating to this contract or the breach thereof . . . ." would go to arbitration, which is open-ended and different from "any controversy or claim of subcontractor against contractor" will proceed to arbitration. *See id.* at 275.

In *J.S. & H. Construction Company v. Richmond County Hospital Authority*, 473 F.2d 212, 213 (5th Cir. 1973), the prime contract between the general contractor and the property owner contained the following arbitration clause:

> 7. Arbitration. (a) It is mutually agreed that <u>all disputes arising in connection with this contract</u> shall be submitted to arbitration in accordance with the provisions of the current Standard Form of Arbitration Procedure of the American Institute of Architects and that all findings of fact by the arbitrators under this agreement shall be conclusive and binding on both parties. It is further mutually agreed that the decision of the arbitrators shall be a prior condition to any right of legal action which either party to the contract may have against the other.

*Id.* at 213 n.2 (emphasis added). When the subcontractor brought an action in court against the property owner, the general contractor, and the surety company, the district court ordered the subcontractor to arbitration. *Id*. at 214. The Circuit affirmed, reasoning that the subcontract incorporated the terms of the prime contract and, therefore, the subcontractor was bound by the arbitration agreement in the prime contract. *Id*. at 214–15. Unlike the arbitration clause here, the clause in *J.S. & H. Construction* provided—without exception or limiting language—that "all disputes arising in connection with th[e] contract" were subject to arbitration. *See id.* at 213 n.2. Thus, neither *J.S. & H. Construction* nor *Exchange Mutual Insurance* is persuasive.

Not only are the cases cited by Defendant unpersuasive because they contained broad arbitration clauses, they are also unpersuasive because the parties objecting to arbitration in both cases only challenged whether their contracts incorporated by reference the terms of the contracts that contained the arbitration clauses. *See Exch. Mut. Ins.* 742 F.2d at 276; *J.S. & H. Constr.*, 473 F.2d at 214–15. None of the parties who challenged arbitration contested whether the actual language of the arbitration clause was broad enough to include their particular type of dispute. Thus, neither of these two cases support Defendant's interpretation of the arbitration clause in this case.

Moreover, as Defendant concedes, the law is clear that "[w]hen a contract incorporates another writing, the two must be read together as the contract between the parties." *Sheriff v. Medel Electric Co.*, 412 A.2d 38, 41 (D.C. 1980). In light of this principle of statutory interpretation, it would be impossible for the court to ignore the fact that the bond agreement includes a judicial resolution provision stating that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction . . . ." (Pl. Ex. 2, § 11). While the judicial resolution clause in a vacuum could be construed as "merely declar[ing] 'ground rules' under which any formal litigation in a judicial forum must proceed," *Cianbro Corp. v. Empresa Nacional de Ingenieria y Technologia, S.A.*, 697 F. Supp. 15, 19 (D. Me. 1988), if the court is to give every provision in the surety agreement meaning, it cannot ignore that there is a provision which calls for filing suit, not merely accepting arbitration as the sole avenue of recourse.

Finally, any ambiguity in the contract must interpreted against the drafter. *Tower Ins. Co.*, 967 F. Supp. 2d at 81. Thus, to the extent there is any uncertainty about the scope of the arbitration clause, in this case the clause must be interpreted against the Defendant.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment will be GRANTED and Defendant's motion will be DENIED. A corresponding order will issue separately.

Date: September 30, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge