UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WESTERN SURETY COMPANY, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 15-cv-00327 (TSC) |
| U.S. ENGINEERING COMPANY, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Western Surety Company ("Western Surety") sued for declaratory and injunctive relief to enjoin Defendant U.S. Engineering Company ("U.S. Engineering") from compelling arbitration proceedings against Plaintiff and making a claim on a surety bond issued by Plaintiff. Western Surety has moved for an order (1) awarding summary judgment on the sole claim,[1] (2) declaring that it has no obligation to U.S. Engineering, and (3) dismissing U.S. Engineering's counterclaim with prejudice. (ECF No. 29.) U.S. Engineering has filed a Motion and an Amended Motion for Reconsideration of the Court's August 31, 2017 Order granting Western Surety's motion to strike U.S. Engineering's supplemental authority. (ECF Nos. 45 & 46.) For the reasons stated herein, U.S. Engineering's motions will be **GRANTED**, and Western Surety's motion will be **GRANTED**.

---

[1] On September 30, 2016, the court granted summary judgment in favor of Western Surety on Counts I and II of the complaint. (ECF Nos. 21 & 22.)

# I. UNDISPUTED FACTS[2]

On January 25, 2012, Turner Construction and U.S. Engineering entered into a contract, under the terms of which U.S. Engineering was to perform renovation and construction work at the South African Embassy in Washington, D.C. (ECF No. 35 ("7(H)(1) Statement") at ¶ 1.) U.S. Engineering awarded a subcontract to United Sheet Metal, Inc. ("Sheet Metal") to furnish labor and materials relating to the installation of sheet metal at the embassy. (*Id.* ¶ 2.) At Sheet Metal's request, Western Surety issued a $585,000.00 performance bond (the "Bond") identifying U.S. Engineering as "Owner," Sheet Metal as "Contractor," and Western Surety as "Surety." (*Id.* ¶¶ 3, 4.)

Section 3 of the Bond provided that Western Surety's obligation would arise after: (1) U.S. Engineering provided notice to Sheet Metal and Western Surety that it was considering a declaration of default; (2) U.S. Engineering declared a default, terminated the contract, and notified Western Surety; and (3) U.S. Engineering agreed to pay the balance of the contract price to Western Surety or to a contractor selected to perform the contract. (*Id.* ¶ 5.) With respect to the first requirement, Section 4 of the Bond explicitly stated that U.S. Engineering's failure to comply with the notice requirement would neither constitute a failure to comply with a condition precedent to Western Surety's obligation nor release Western Surety from its obligation *unless* Western Surety demonstrated prejudice. (*Id.*) The Bond was silent as to whether the second two requirements constituted a condition precedent.

Section 5 of the Bond detailed the four options that Western Surety was permitted to take to fulfill its obligation after U.S. Engineering had satisfied the conditions of Section 3. (*Id.*) First, Western Surety could, with U.S. Engineering's consent, arrange for Sheet Metal to complete the

---

[2] The following facts are taken from the parties' Local Rule 7(h)(1) Statement. (ECF No. 35.) The facts are undisputed unless otherwise noted.

contract.  (*Id.*)  Second, Western Surety could complete the contract itself, through its agents, or through its independent contractors.  (*Id.*)  Third, Western Surety could solicit bids from qualified contractors, arrange for a contractor acceptable to U.S. Engineering to complete the contract, and pay damages to U.S. Engineering.  (*Id.*)  Fourth, Western Surety could waive its rights to facilitate completion of the project and either compensate U.S. Engineering in the amount for which Western Surety was liable or deny liability entirely.  (*Id.*)

In February 2013, issues regarding Sheet Metal's performance began to arise, and continued through the spring and summer of 2013, culminating in U.S. Engineering formally terminating the subcontract on September 9, 2013.  (*Id.* ¶¶ 8, 9.)  U.S. Engineering then arranged for completion of Sheet Metal's work by U.S. Engineering and four other companies, without the knowledge of Western Surety.  (*Id.* ¶ 11.)  On June 12, 2014, Western Surety received a notice of claim from U.S. Engineering advising Western Surety that:  (1) Sheet Metal had been terminated as a subcontractor, and (2) U.S. Engineering had incurred expenses to complete and correct Sheet Metal's work.  (*Id*. ¶ 8.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

The nonmoving party, in response, must present its own evidence beyond the pleadings to demonstrate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if "a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is genuine if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

### III. ANALYSIS

#### A. U.S. Engineering's Motion for Reconsideration

U.S. Engineering asks this court to reconsider its August 31, 2017 order striking from the record its notice of supplemental authority—an Arbitration Award in favor of U.S. Engineering and against Sheet Metal. (ECF No. 46-2.) The court *sua sponte* struck the authority from the record because U.S. Engineering's opposition to the motion to strike was untimely. In its motion for reconsideration, U.S. Engineering explains that it obtained Western Surety's consent for an extension of time to respond but neglected to inform the court of the agreement. (ECF No. 46-1 at 1.) Because U.S. Engineering received Western Surety's consent before expiration of the deadline, the court will reconsider its decision to grant Western Surety's motion to strike.

#### B. Western Surety's Motion to Strike

Approximately four months after briefing of Western Surety's motion for summary judgment concluded, U.S. Engineering filed a notice of supplemental authority. (ECF No. 43.) The stated

4

purpose of the notice is to bring to the court's attention a July 26, 2017 Final Award from the International Centre for Dispute Resolution, in an arbitration. (*Id.*)

According to the award, the arbitration was initiated by Sheet Metal, but Sheet Metal stopped participating. (ECF No. 43-1 at ¶ 3.) Subsequently, upon review of evidence submitted by U.S. Engineering, the arbitrator found in favor of U.S. Engineering. (*Id.* ¶ 14.) U.S. Engineering maintains that the award "establishes on the merits that United Sheet Metal (and by extension Western Surety) did not have valid defenses to U.S. Engineering's allegations about United Sheet Metal's work," "establishes the amount of U.S. Engineering's damages," and serves as proof that Western Surety has not proved "that it was prejudiced to the extent of 100% of U.S. Engineering's claim against the bond." (ECF No. 43 at ¶¶ 6–7.)

Western Surety argues that the Arbitration Award should be stricken from the record for at least five reasons. First, in an earlier decision, this court held that Western Surety "is not bound by the arbitration agreement in Defendant's subcontract." (ECF No. 44 at ¶ 1.) Second, Western Surety did not participate in the arbitration. (*Id.* ¶ 3.) Third, U.S. Engineering neither sought leave to supplement the record nor cited any authority permitting it to supplement a fully-briefed motion. (*Id.* ¶ 4.) Fourth, the supplemental authority offers no authority and lacks precedential value. (*Id.* ¶¶ 5–6.) And fifth, none of the findings have any bearing on the chief argument made by Western Surety in favor of summary judgment. (*Id.* ¶ 7.)

Western Surety presents several salient points. Nevertheless, because "motions to strike, as a general rule, are disfavored," *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (footnote omitted), and because the Arbitration Award has no effect on this court's interpretation of the Bond, Western Surety's motion to strike is denied.

**C. Western Surety's Motion for Summary Judgment**

Western Surety argues that it is entitled to summary judgment because its obligation under the Bond was discharged when U.S. Engineering failed to comply with two conditions precedent—created separately in Bond Sections 3.1 and 3.2—to Western Surety's performance. Under District of Columbia law, which applies here, a condition precedent is "'an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.'" *Washington Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 549 (D.C. 2000) (quoting Restatement (Second) of Contracts § 224 (Am. Law Inst. 1981)). In other words, a condition precedent is a fact which must either occur or exist before a duty to perform can arise. *See Brier v. Orenberg*, 90 A.2d 832, 833 (D.C. 1952).

    1. <u>U.S. Engineering Failed to Adhere to a Condition Precedent</u>.

Western Surety first contends that Section 3.2 creates a condition precedent to its performance on the Bond because it requires that the owner provide *timely* notice after declaring a contractor in default and terminating the construction contract. (ECF No. 29 ("Mot. Summ. J.") at 13–19.) According to Western Surety, U.S. Engineering did not satisfy the condition precedent because it failed to provide any notice to Western Surety until nine months after U.S. Engineering had terminated Sheet Metal and until U.S. Engineering had overseen completion of the work that fell within the scope of the subcontract. (*Id.* at 13–14.) In opposition, U.S. Engineering relies on the fact that Section 3.2 "does not contain the phrase 'timely notice'" or mention "a 'nine-month' statute of limitations." (ECF No. 34 ("Opp. Mot. Summ. J.") at 5.) U.S. Engineering contends that it fulfilled its contractual obligations: unbound by any time constraints, it declared the default, terminated the contract, and notified Western Surety. (*Id.* 4–5.)

6

As the parties' positions indicate, the key question is whether the contract includes a provision requiring U.S. Engineering to take specific action within a certain amount of time in order to trigger Western Surety's obligation under the Bond. Western Surety relies on *Hunt Construction Group, Inc. v. National Wrecking Corp.*, 587 F.3d 1119 (D.C. Cir. 2009), in which Hunt Construction Group subcontracted work to National Wrecking Corporation, with an agreement that work would be completed by a certain date. *Id.* at 1120. As is the case here, the bond between National Wrecking and the sureties provided the sureties with options to remedy National Wrecking's default. *Id.* In February 2004, Hunt Construction knew that National Wrecking's work was delayed, believed the delays were a default of the subcontract, and knew that it would incur additional expenses because of the delay. *Id.* Nevertheless, not until July 2004—five months after the alleged default and three months after National Wrecking's work had been completed—did Hunt Construction notify the sureties and seek performance under the bond. *Id.* In upholding the district court's ruling against Hunt Construction, the D.C. Circuit reasoned that the sureties' options to remedy the default would be "nonsensical" without the inference that the sureties should be given timely notice of the declaration of default. *Id.* at 1121. Therefore, Hunt Construction's failure to provide the sureties with timely notice of a claim under the bond was a failure of a condition precedent, which relieved the sureties of their obligations under the bond. *Id.* at 1122.

In this case, adhering to basic contract principles and applying *Hunt Construction*, the court finds in favor of Western Surety. In construing a contract, a court must give meaning to each provision, if possible. *Steele Founds., Inc. v. Clark Const. Grp., Inc.*, 937 A.2d 148, 154 (D.C. 2007) ("Contractual provisions are interpreted taking into account the contract as a whole, so as to give effect, if possible, to all of the provisions in the contract."). Pursuant to Section 5 of the Bond, Western Surety was explicitly granted the right to cure Sheet Metal's default by arranging for

7

completion of the work (by Sheet Metal, Western Surety, an agent/independent contractor of Western Surety, or another approved subcontractor). Failing to construe the Bond as requiring notice of default and termination before the completion of Sheet Metal's work would effectively nullify the agreed-upon provisions that afforded Western Surety the right to take remedial action in the event of Sheet Metal's default, and would render the provisions superfluous.

Accordingly, the court finds that although Section 3.2 does not explicitly state that U.S. Engineering must notify Western Surety within a certain amount of time, the explicit grant to Western Surety of a right to remedy the default necessarily implies that timely notice is required to trigger Western Surety's obligation under the Bond because Section 5 operates only if timely notice is given. U.S. Engineering's notice was clearly untimely. This finding is in accord with *Sheet Metal Workers' Local Union No. 100 Washington, D.C. Area Pension Fund v. Western Surety Co.*, 187 F. Supp. 3d 569 (D. Md. 2016), which found that Western Surety was not relieved of liability because, unlike here, "there was no provision in the Bond that would have triggered an opportunity for Western Surety to cure any default." *Id.* at 581.

2. Prejudice Is Not a Required Showing Under Section 3.2 of the Bond.

U.S. Engineering argues that Western Surety must establish that it has been prejudiced before it can be released from its obligation under the Bond. (Opp. Mot. Summ. J. at 11–18.) Specifically, U.S. Engineering contends that Western Surety has not shown and cannot show actual prejudice because it now has the files necessary to investigate the issues and can freely communicate with the companies that completed Sheet Metal's work. (*Id.*) These arguments fail for at least three reasons.

First, the Bond does not require a showing of actual prejudice. Section 4 of the Bond states that a "failure . . . to comply with the notice requirement in Section 3.1" would require a demonstration of actual prejudice to constitute a condition precedent, but there is no such provision

8

which references the notice requirement of Section 3.2. (7(h)(1) Statement at ¶ 5.) As noted above, if possible, a court must give meaning to each provision of a contract. *Steele Founds., Inc.*, 937 A.2d at 154. Taking the whole Bond into account and giving full effect to Section 4, the court finds that the provision requiring Western Surety to demonstrate actual prejudice to be released from its obligation is limited to U.S. Engineering's failure to provide notice pursuant to Section 3.1. Put differently, while U.S. Engineering's noncompliance with the notice requirement in Section 3.1 requires an actual prejudice showing from Western Surety, U.S. Engineering's noncompliance with the notice requirement in Section 3.2 requires no such showing.

Second, a showing of actual prejudice is not required as a matter of law. U.S. Engineering relies on *Conesco Industries, Ltd. v. Conforti & Eisele, Inc.*, 627 F.2d 312 (D.C. Cir. 1980), in which the issue was whether Conesco Industries was barred from recovering under a bond due to its failure to timely notify the surety that the subcontractor had been terminated. *Id.* at 313. The subcontractor walked off the job the first week of December 1975; Conesco did not notify the surety of the default until July 30, 1976. *Id.* at 313–14. The bond stated that "no suit or action shall be commenced . . . unless claimant . . . shall have given written notice to any two of the following: the principal, the owner, or the surety . . . within ninety (90) days" after the claimant last completed work or furnished materials related to the claim. *Id.* at 314. Applying Maryland law, the D.C. Circuit held that the bond language did not create a condition precedent of notice to the surety before recovery could be made, as the bond did not expressly require that the surety receive notice. *Id.* at 315. The Circuit noted that it was possible that under the terms of the bond, notice could be given to the principal on the project and the owner of the project and not to the surety, and the surety would still be liable. *Id.* Under such circumstances, the surety was not discharged from its obligations absent a showing of prejudice or damage suffered as a result of Conesco's failure to give adequate notice. *Id.* at 317.

9

Putting aside the fact that *Conseco* and this case are governed by different states' laws, the language of the bond in *Conseco* differs from the language of the Bond here. Section 3.2 provides that the Surety's obligation under the Bond arises after U.S. Engineering declares default, terminates the contract, and *notifies Western Surety*. (7(H)(1) Statement at ¶ 5.) Under this clear and explicit language, Western Surety cannot be liable if notice is provided only to another entity or to some combination of other entities involved with the project (as was the case in *Conesco*). To the contrary, as previously stated, Section 3.2 of the Bond makes notice of Sheet Metal's default and termination a condition precedent for liability. Western Surety falls into the category of "[s]ureties who require notice of default so that they can themselves take remedial action presumably [because they] are unwilling to submit to the vagaries of litigation a[nd] calculation of the exact impact of being denied notice." *Hunt Constr.*, 587 F.3d at 1122.

Third, U.S. Engineering has presented scant legal support for its assertion that Western Surety's discharge is limited to the extent of actual loss. U.S. Engineering relies solely on *Mergentime Corp. v. Washington Metropolitan Area Transit Auth.*, 775 F. Supp. 14 (D.D.C. 1991). That case involved whether the modifications that the plaintiffs and defendant made to the original construction contract materially increased the surety's risk so as to entitle the surety to a complete discharge of its obligations under District of Columbia suretyship law. *Id.* The surety, in arguing that it did, relied on the fact that the material modifications were made through a subsequent agreement without its prior notice and consent. *Id.* at 15. The D.C. Circuit held that the surety was not entitled to discharge on the basis of the modification alone; any discharge must be cabined to the prejudice the surety suffered. *Id.* at 22–23.

*Mergentime Corp.* is inapplicable to the instant action. In *Mergentime Corp.*, the court was confronted with a bond contract that had been modified by the other two parties without notification

10

to the surety. *Id.* Here, U.S. Engineering's breach of the agreement deprived Western Surety of its Section 5 rights. Given these significant differences, the court cannot read *Mergentime Corp.* as support for the argument that Western Surety's discharge must be limited in any way.

* * *

In sum, each of U.S. Engineering's arguments misses the mark. Indeed, if Section 5 were stricken from the Bond and Section 4 were altered, U.S. Engineering's arguments might have traction. But, where, as here, there is a valid contractual provision affording the surety an opportunity to remedy the default, U.S. Engineering's arguments fly in the face of the Bond's clear language and construction, and are therefore unavailing. U.S. Engineering is precluded from depriving Western Surety of the opportunity to cure default and demanding payment from Western Surety despite that deprivation.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motions for Reconsideration will be GRANTED, Plaintiff's Motion to Strike will be DENIED, and Plaintiff's Motion for Summary Judgment will be GRANTED.

An appropriate Order will issue separately.

Date: March 20, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge